[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the plaintiffs have brought an action against the defendants for breach of contract in the sale of real estate. On February 3, 1999, the plaintiffs purchased real property at 29 Ellen Road in Lebanon, Connecticut from the defendants. A copy of that deed was attached to the complaint. The conveyance was made pursuant to the terms of a purchase and sale agreement between the plaintiffs and the defendants which is also attached to the complaint. Prior to the entering into the contract to purchase the property, the plaintiffs were provided with a residential property condition disclosure report, pursuant to the provisions of C.G.S. § 20-327b et seq. Pursuant to that statute, the disclosure became a part of the purchase and sale agreement as they were required by law to be attached to the contract.
 Facts
The plaintiff claims that they relied upon the representations in the disclosure to the affect that there were no known problems with the quality or quantity of the water on the premises. In fact, they claim the water system on the premises was inadequate and that this was known to the defendants at all times relevant to this transaction. The plaintiffs also claim that the municipal records show that applications were made as CT Page 13468-gt early as 1973 for permits to correct the water problem. These records demonstrate that the defendant, Richard Conti, attempted, but failed, to increase the water flow by increasing the depth of the well. In addition, individuals, familiar with the property during the time that the defendants owned it, confirmed to the plaintiff that the defendants had mentioned the water problems they had had. The plaintiffs also claim that they experienced water problems immediately upon entering the premises and have ascertained through discussion with well drillers and others who testified before this court that their inadequate water problems were a result of long standing problems of which the defendants must have been aware.
The property in question is a vacation home. Prior to the purchase, the plaintiffs had the home inspected but the inspector was unable to determine the water flow because the water had been turned off since the house was not being used at the time. It was a seasonal residence. The plaintiffs claim that they therefore relied exclusively on the representation of the defendants. The plaintiffs claim that as a result of this problem they had to have the well redug and that they expended money to bring the well up to standards.
The defendants claim that the water on the premises was supplied by a private drilled well completed on August 8, 1973 by the defendant's predecessor in interest. They also claim that during the years that the defendants occupied the premises on a seasonal basis, they winterize the water system each fall and reactivated it each spring. The defendant, Janet Conti, testified that the water supply was adequate and that the well never ran dry during the Conti's family tenure. On May 29, 1997, the defendant, Janet Conti, listed the premises for sale and executed the Connecticut Department of Consumer Protection Residential Property Condition Disclosure Report. Defendants continued to occupy the premises during the summers of 1997 and 1998. On November 4, 1998, the plaintiffs executed a Southeastern Connecticut Association of Realtors Form Purchase and Sale Agreement for the premises. The sale agreement also provided for "a water quantity analysis" and allowed the buyers to cancel the agreement in the event that the analysis was unacceptable. On February 3, 1999, the defendants conveyed the premises to the plaintiffs. The plaintiffs assumed occupancy in June of 1999 and testified that they ran out of water very shortly thereafter. On July 12 and 13, 1999, Stavens Brothers, Inc., a well drilling contractor redeveloped the well and according to the testimony of Joel Stavens, an expert witness, restored its capacity to the well's approximate 1973 condition. CT Page 13468-gu
The Town of Lebanon sanitarian testified that such a well does not meet present suggested recharge standards, but there is an alternate standard which recommends a yield of between 100 and 150 gallons per day per bedroom in the dwelling to be supplied. The subject premises has two bedrooms. The Town of Lebanon records disclose no well-dwelling permits issued for the subject premises between 1973 and 1999. After Stavens' repairs of July 1999, the plaintiffs testified that they experienced an adequate water supply if they were careful. In May, 2001, the plaintiffs again hired Stavens Brother, Inc. to improve the premises by drilling a new 1,005 foot well.
The plaintiffs brought this action in two counts alleging misrepresentation by the defendants with respect to the condition of the water supply on the premises and alleging that the plaintiffs relied exclusively and to their detriment upon the 1997 disclosure of the defendant, Janet Conti.
 Discussion
The essential elements to an action for fraudulent misrepresentation are as follows:
1) that a false representation was made as a statement of facts;
2) that is was untrue and known to be untrue by the party making it;
3) that it was made to induce the other party to act on it; and
4) that the latter did so act upon it to his injury.
The party asserting such a cause of action must prove the existence of the first three elements by a standard higher than the usual fair preponderance of the evidence which higher standard is "clear and satisfactory" or "clear, precise and unequivocal." Barbara Weissman,Trustee v. Kaspar, 233 Conn. 531 (1995).
The defendants claim that the plaintiffs have failed to sustain their burden of proof. The plaintiffs admit that they read and understood the three paragraphs which appear directly above the plaintiff's signature on the disclosure form which state that the defendants' statement did not "constitute a warranty" and was "not a substitute for inspections." The final paragraph also urged the plaintiffs to "carefully inspect the property and if desired to have the property inspected by an inspector." CT Page 13468-gv The defendant then argues that it is disingenuous for the plaintiffs to argue that they relied solely on Mrs. Conti's representations especially considering that the sales agreement, prepared by the plaintiffs, included inspections provisions and a water supply contingency. The plaintiffs claim that in May of 2001, the well development was unsatisfactory and the plaintiffs hired Stavens to drill a new well 1005 feet deep with a yield of three quarters of a gallon per minute. The yield is sufficient considering the depth of the well. Both Mr. Stavens and Raymond Andrews, the Lebanon sanitarian, testified that the one quarter gallon per minute yield of the old well, considering its maximum depth of 540 feet and static level of 100 feet, was inadequate. They further testified that such inadequacy would have been apparent to anyone utilizing the water system in normal household use.
The dwelling is a seasonal home. The plaintiffs first use was in June of 1999 until it ran out of water within a couple of days after normal use. Thereafter they had to ration their use. They could not take showers in the morning nor flush the toilet after each use and so on. They often had to bring in water and often went to the homes of friends to take showers. The plaintiffs had no reasonable alternative to having a new well drilled.
The Property Conditions Disclosure Act, C.G.S. § 20-327b et seq. provides that each seller shall provide disclosures about the conditions of residential real property on a form to be prescribed by the Department of Consumer Protection. The disclosure is made by the defendants on such a form. The statute provides that the disclosure is to be attached to the contract to buy, thus making it part of the contract between the parties. The disclosure does not constitute a warranty. However, the statute does impose a duty on the seller to disclose information of which the seller is aware. Failure to properly disclose known facts on the disclosure statement is a breach of that duty. The plaintiffs claim that the statute creates a duty on the part of the defendants to tell what they knew and furthermore the plaintiffs claim that the defendants knew about the water problem. The testimony was overwhelming that no one living in the house would not have known about the problem. However, Mr. Richard Conti, who was not at the trial, clearly experienced problems or he would not have tried to alleviate them by getting a permit for a new well and trying to dig a new one with no success. The court also finds that the defendants' argument that the plaintiffs were aware that the defendants were not given a warranty is misplaced. The plaintiffs are not claiming under a warranty theory. The statute was written to protect the buyer. It should not be construed to insulate the seller from liability for the failure to disclose known facts. CT Page 13468-gw
The court finds that the plaintiffs have satisfied their burden of proof. The burden of proof is met if the plaintiffs proved the factual elements of their claim. In this case, they must prove that the defendants made statements about the water, that those statements were untrue, that the defendants knew them to be untrue and that the plaintiffs acted upon those statements to their detriment. If they have proven these things to the required standard they should win. They do not have to prove that they took all possible steps to ascertain the truth of the statements. Indeed, such a requirement would contradict the reliance requirement.
The court finds that the plaintiffs have satisfied their burden of proof as follows:
1. There was a false representation made as a statement of fact in the disclosure statement;
2. The statement was untrue, that there were no water problems and this was known to be untrue by the defendants;
3. The statement was made to induce the plaintiffs to act upon it; and
4. The plaintiffs acted in reliance upon the information to their injury.
Regarding No. 4, the plaintiffs need prove this only by the preponderance of the evidence. With respect to the first three counts, the plaintiffs have proved their case by clear and convincing evidence as required by the statute.
The defendants also argue that the only way that the plaintiffs can prove their damages is by proof of the diminution of value of the premises presumably by an appraiser. The court finds that this claim does not have a foundation in Connecticut law.
"The permissive language of Whitman Hotel [Corp], clearly leaves a selection of the repair measure in the trial court's discretion, limited only by the attached proviso . . . The cost of repairs, therefore, is a proxy of diminution of value caused by damage to property. Because these are in effect alternative measures of damages, the plaintiff need not introduce evidence of both diminution in value and cost of repairs."Willow Springs Condominium Association, Inc. v. Seventh BRT DevelopmentCorp. , 245 Conn. 1 (1998). The Willow Springs court went on to uphold repair costs as a measure of damages where "there is no indication that CT Page 13468-gx the cost of repairing the chimneys, desks and vents would exceed the purchase price of the property." Requiring proof of diminution of value by an appraiser makes sense in those cases where it appears that effecting repairs would constitute economic waste. This is not the case here.
The court, therefore, finds for the plaintiffs on liability and awards damages in the total amount of $21,885.35 in accordance of the last page of the plaintiffs' brief which lists the amount of the damages for the new well and attorney's fees as provided in the contract for a breach thereof.
D. Michael Hurley, Judge Trial Referee